In the Matter of JAN MUNEY ARNETT, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [893 NYS2d 334]—

Spain, J.

Petitioner, an ophthalmologist licensed to practice medicine in New York since 1978, was charged in 2006 with 33 specifications of professional misconduct in violation of Education Law § 6530, including fraudulent practice, false reporting, failure to maintain records, incompetence on more than one occasion, unwarranted treatment and moral unfitness to practice medicine (*see* Education Law § 6530 [2], [5], [20], [21], [32], [35]). The charges related to his treatment in 2004 of four patients (hereinafter patients A through D), as well as knowing and false representations—that he had performed surgeries which he knew he had not performed—in the operative reports of 57 additional patients. Following a hearing at which testimony was given by patients A through D, five medical experts and petitioner, a Hearing Committee of respondent State Board for Professional Medical Conduct sustained 24 of the 33 charges in their entirety and sustained six others in part, and revoked

petitioner's license to practice medicine in this state.[1] On administrative cross appeals, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) modified by overturning the Hearing Committee's determination to the extent that it had sustained—as alternative findings—five factual allegations regarding patients A, B and C. Additionally, the ARB dismissed two specifications of misconduct that had been withdrawn at the hearing but were mistakenly sustained by the Hearing Committee. The ARB rejected petitioner's remaining claims and, concluding that the evidence that the Hearing Committee found to be reliable supported the remainder of the charges sustained by the Hearing Committee, the ARB sustained those remaining charges and affirmed the penalty of license revocation. Petitioner commenced this CPLR article 78 proceeding in this Court seeking review of the ARB's determination.

"Given that the Hearing Committee's determination was reviewed by the ARB . . . , our review is limited to ascertaining whether [the ARB's determination] was arbitrary and capricious, affected by error of law or an abuse of discretion" (*Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d 1162, 1164 [2008] [internal quotation marks and citations omitted]), and "[t]he ARB's determination 'will not be disturbed if it has a rational basis and is factually supported' " (*id.*, quoting *Matter of Solomon v Administrative Review Bd. for Professional Med. Conduct, Dept. of Health*, 303 AD2d 788, 789 [2003], *lv denied* 100 NY2d 505 [2003]). Petitioner challenges the ARB's determination as arbitrary and capricious with respect to its disposition of factual allegations in the statement of charges regarding patients A, B and C that were alleged in the alternative, which the Hearing Committee sustained. Specifically, as relevant here, petitioner was charged with misconduct for performing a particular retinal surgery (vitrectomies with epiretinal membrane stripping) without medical indication (patients A and C) and without adequate fiber-optic illumination of the surgical field (patients A, B and C);[2] he was also charged *in the alternative* with knowingly and falsely representing to the patients' insurance companies that he had performed this retina surgery when, in fact, he knew he had not, with intent to deceive (patients A, B and C). The Hearing Committee sustained all of the foregoing factual specifications,

---

1. None of the charges for practicing with incompetence were sustained.

2. Relatedly, petitioner was also charged with, and found guilty of, filing false operative reports indicating that he had employed the required illumination and had performed the surgeries when he had not.

finding that (1) petitioner did not perform those retinal surgeries that he billed for and recorded in the patients' operative reports, rejecting petitioner's testimony to the contrary, and then it held, in the alternative, that (2) even assuming he had performed those retinal surgeries, he had done so without adequate medical indication (patients A and C) and without adequate fiber optic illumination, as required by the industry standard for this procedure according to all of the expert testimony (patients A, B and C).

On administrative appeal, the ARB sustained the Hearing Committee's findings that petitioner had not performed the retinal surgeries on patients A, B and C. In doing so, "[t]he ARB deferred to the Hearing Committee's credibility findings[,] . . . and that determination will not be disturbed by this Court" (*Matter of Insler v State Bd. for Professional Med. Conduct*, 38 AD3d 1095, 1098 [2007]). The ARB's conclusion was factually supported by proof in the record showing that these procedures were not medically needed by two of these patients, that petitioner never sent excised tissue samples for evaluation by the pathology department as required, and that it was highly doubtful—if not impossible—that the surgery could have been successfully completed without fiber optic illumation (as petitioner testified it had been) and within the operating times recorded. The evidence as a whole supported the ARB's rational inference that petitioner knowingly made false misrepresentations, with the intent to deceive, in the patients' operative reports and when billing their health insurance companies (*see Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 929 [2007], *lv denied* 10 NY3d 701 [2008]).

We see no reason to disturb the ARB's conclusion that the Hearing Committee erred in also making negligence findings related to these surgeries in the alternative, i.e., the ARB held that "[o]nce the [Hearing] Committee determined that [petitioner] did not perform [the retinal surgeries] on [patients A, B and C], the [Hearing] Committee should have dismissed the [a]llegations concerning performing the procedures without proper indication or proper illumination." Notably, "the ARB was empowered to substitute its judgment for that of the Hearing Committee in . . . determining guilt" (*Matter of Bottros v DeBuono*, 256 AD2d 1034, 1036 [1998]). We find no abuse of discretion or error of law in the foregoing disposition. While the ARB, at the urging of respondent Department of Health, has rationally opted to allow alternate *charging* but not alternate *findings*, we see nothing unfair, inconsistent or contradictory in the rationale or result here (*see Pardo v Novello*, 2 AD3d 991,

992 [2003] [Hearing Committee did not err in making conclusions in the disjunctive "and/or"]; *Matter of Orens v Novello*, 307 AD2d 392, 392 [2003], *appeal dismissed* 100 NY2d 614 [2003]).

Likewise without merit is petitioner's claim that the burden of proof was shifted to him. Initially, petitioner's challenge to the Hearing Committee's determination is misplaced, as he sought review from the ARB, and our review in this special proceeding is limited to the ARB's determination (*see Matter of Conteh v Daines*, 52 AD3d 994, 995 [2008]; *Matter of Orens v Novello*, 307 AD2d at 393). In any event, the ARB's decision makes clear that the burden of proving the charges by a preponderance of the evidence rested on the State Board for Professional Medical Conduct (*see* Public Health Law § 230 [10] [f]). The ARB rejected petitioner's burden shifting claims, noting that the Hearing Committee's comments at issue were made in the context of reviewing the evidence against petitioner that he did not perform the retinal surgeries on patients A, B and C and its reasons for rejecting his testimony as not credible. We discern no error.

Finally, we cannot agree that the penalty of revocation affirmed by the ARB "is so disproportionate in light of the offense[s] that it shocks one's sense of fairness" (*Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 525 [2004] [citation omitted]; *accord Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d at 1166-1167). In rejecting petitioner's request for a reduced penalty of requiring a practice monitor and record review, the ARB agreed that this would provide inadequate protection given petitioner's history of refusing to follow supervision—for example, by failing to follow the rule requiring that excised tissue be forwarded to the pathology department despite repeated directives by the hospital medical director and by failing to inform hospital administration that he had for years performed surgeries without fiber optic illumination. Contrary to petitioner's claim, the ARB's reliance on those general factors regarding petitioner's medical practice—which are supported by the evidence, including petitioner's own testimony—was not inconsistent with its dismissal of the alternate charges (that petitioner had performed certain surgeries negligently).

The ARB's determination that license revocation was the only adequate penalty also rested on its conclusion that petitioner had "demonstrated a pattern of deception in his entries in medical records and insurance billings," and that it saw "no reason why [he] would abandon that pattern with

a practice monitor . . . [or] to believe that any form of retraining would teach [him] integrity," and that his "repeated fraudulent conduct demonstrates his unfitness to practice medicine." These findings are virtually unassailable given the documentary and testimonial evidence adduced at the hearing, credited by the ARB, of petitioner's wide-scale fraudulent practices and misrepresentations, deviations from medically accepted standards, performance of other surgery—not challenged herein—without adequate medical indication, repeated billing for surgeries not performed and falsification of medical records. We perceive no basis upon which to disturb the ARB's penalty determination (see *Matter of Sidoti v State Bd. for Professional Med. Conduct*, 55 AD3d at 1167).

Cardona, P.J., Mercure, Malone Jr. and Kavanagh, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.